UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RICHARD L. GUINN, Individually and as co-representative of THE ESTATE OF BENJAMIN E. GUINN and CONNIE A. GUINN, Individually and as co-representative of THE ESTATE OF BENJAMIN E. GUINN<br>    *Plaintiff,*<br><br>v.<br><br>THE CARE GROUP OF TEXAS INC. and NONIN MEDICAL, INC.<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 3:11-cv-00230<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

1.    Plaintiff RICHARD L. GUINN, Individually and as co-representative of THE ESTATE OF BENJAMIN E. GUINN and CONNIE A. GUINN, Individually and as co-representative of THE ESTATE OF BENJAMIN E. GUINN ("Plaintiffs") complains of THE CARE GROUP OF TEXAS INC., NONIN MEDICAL INC., and CAREFUSION CORPORATION, INC., ("Defendants"), for cause of action and would respectfully show the Court that:

### I. JURISDICTION

Defendant NONIN MEDICAL INC. alleges that this Court has jurisdiction over this action because diversity of citizenship exists between the Plaintiffs and Defendant NONIN MEDICAL INC and because the value of the claims exceeds $75,000 exclusive of interests and cost. Plaintiff previously filed a Motion to Remand this case to state court arguing that this Court lacked have subject matter jurisdiction over this case. Plaintiffs raised the issue that removal was

improper because there is not complete diversity of citizenship between the parties. Defendant CARE GROUP OF TEXAS, INC. is a Texas entity with its principle place of business in Texas. This Court having reviewed the pleadings filed by the respective parties, denied Plaintiffs' Motion to Remand based upon this review and its consideration of the allegations presented in Plaintiffs Original Petition. Subsequently the additional party named herein was identified by Plaintiff in addition to information that will allow Plaintiffs to prosecute a claim against Defendant CARE GROUP OF TEXAS, INC. under the statutory exceptions provided in Texas Civil Practices & Remedies Code § 82.003. Plaintiffs anticipate filing a Motion to Reconsider the Court's previous ruling on their Motion to Remand in light of this new information as Plaintiffs continue to assert that Defendant CARE GROUP OF TEXAS, INC. was not improperly joined as a Defendant and as such this Court lacks jurisdiction.

## II. VENUE

2.      Venue for this suit is proper in Brazoria County under Texas Civil Practice & Remedies Code section 15.002 as it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred. Furthermore, at the time of the incidents giving rise to this lawsuit, Defendants conducted substantial business in this county.

## III. DISCOVERY LEVEL

3.      Discovery in this matter shall be conducted under Level 2 of the Texas Rules of Civil Procedure.

## IV. PARTIES

4.      Plaintiffs RICHARD L. GUINN, Individually and as co-representative of THE ESTATE OF BENJAMIN E. GUINN and CONNIE A. GUINN, Individually and as co-

representative of THE ESTATE OF BENJAMIN E. GUINN are adult individuals residents of Brazoria County, Texas.

5. Defendant NONIN MEDICAL, INC. is a Minnesota corporation, headquartered in Plymouth, Minnesota and has previously appeared in this action.

6. Defendant THE CARE GROUP OF TEXAS, INC. is a Texas corporation and with its principal place of business in Brazoria County, Texas. It may be served with process through its registered agent: <u>THE PRENTICE-HALL CORPORATION SYSTEM at 800 Brazos St., Ste. 750, Austin, Texas 78701-2554</u>.

7. Defendant CAREFUSION CORPORATION is a Delaware corporation, headquartered in San Diego California and can be served by and through its registered agent: <u>Corporation Services Company 2711 Centerville Road Suite 400, Wilmington, Delaware 19808</u>.

## V. NATURE OF THE ACTION

8. BEJAMIN E. GUINN ("Benjamin") was the vibrant and loved seven-year-old child of Plaintiffs RICHARD L. GUINN and CONNIE A. GUINN. Benjamin suffered from a genetic disorder referred to as X-Linked Myotubular Myopathy ("XMM"), which is a form of congenital myopathy where cell nuclei are abnormally located in skeletal muscle cells. Symptoms of XMM can include hypotonia, hypoxia-requiring breathing assistance, and scaphocephaly. XMM typically presents at birth, and is thus considered a congenital myopathy. Though not verbally communicative or ambulatory, Benjamin was a thriving child and was able to heroically overcome the limitations created by his medical condition in a nearly endless variety of commendable ways.

9. As a result of his medical condition, Benjamin required the assistance of a Avant™ 9600 Pulse Oximeter ("Avant 9600 PO"), which was manufactured, designed,

constructed, tested, fabricated, produced, assembled, marketed and/or sold by Defendant NONIN MEDICAL, INC. ("Nonin"). The Avant 9600 PO is a portable tabletop device designed for continuous noninvasive measurement, display and recording of functional oxygen saturation of arterial hemoglobin ("SpO$_2$") and pulse rate using one of a range of compatible oxygen sensors.

10. In addition, Benjamin required the assistance of a CareFusion Pulmonetic Systems LTV 900 ventilator ("LTV 900"), which is manufactured, designed, constructed, fabricated, assembled, marketed and/or sold by Defendant CAREFUSION CORPORATION ("CareFusion"). The LTV 900 is designed to provide continuous or intermittent breathing support for adult or pediatric patients who require mechanical ventilation.

11. The Food and Drug Administration ("FDA") approved use and marketing of the Avant 9600 PO on June 3, 2004, pursuant to 21 U.S.C. § 360(k), through the Section 510(k) Premarket Notification process (*see* 510 (k) No. K040589). The Avant 9600 PO's approval was based upon misrepresentations and false statements made by Defendant Nonin as to the safety, effectiveness, functionality, performance and design of the device.

12. The FDA approved use and marketing of the LTV 900 through the 510(k) process as well, based upon misrepresentations and false statements made by Defendant CareFusion as to the safety, effectiveness, functionality, performance and design of the device.

13. In order to be eligible for 510(k) clearance, the new device must exhibit the same safety and effectiveness characteristics as the "predicate" device to which the new one is being compared. Premarket Notification requires that a new model of a device be compared for safety and effectiveness with another lawfully marketed model. A successful 510(k) submission results in FDA permission to market the new device. The nature of this comparison depends on the

4

device and the degree of risk associated with its use. The comparison may comprise physical or performance characteristics as measured by standardized methods.

14. Some Premarket Notification submissions are based upon bench testing of the new device and a comparison of the findings with the known performance characteristics of the predicate device. Several devices requiring Premarket Notification are subject to conformance with "Special Controls." Special Controls can be specialized labeling, conformance to specific standards or the design of connections device or equipment failure or malfunction. Clearance of a Premarket Notification submission by the FDA confers permission to market the new device. By legal definition, it is not an "approval" process.

15. According to the Nonin's 510(k) summary, the Avant 9600 PO is intended for prescription use with adult, pediatric, infant and neonatal patients in hospitals, medical facilities, home care and sub-acute environments. The device uses LED components to monitor a patient's SpO2 and pulse rate values as well as alarm limit and volume settings. The device can be powered internally with a 12 VDC 1.5A AC adapter or with an integral sealed 7.2-volt rechargeable NiMH battery pack.

16. When functioning as intended, the Avant 9600 PO provides adjustable audible and visual pulse rate, oxygen saturation and perfusion alarms. It is intended for continuous monitoring conditions, for patients who are well or poorly perfused. Defendant Nonin in its 510(k) application represented that the Avant 9600 PO is substantially equivalent to the Avant 2120 (*see* 510(k) No. KO31487). When functioning as intended, the LTV 900 is intended to provide continuous or intermittent breathing support for adult or pediatric patients who require mechanical ventilation.

17. On the morning of June 12, 2010, Benjamin was utilizing a Nonin Avant 9600 PO and the LTV 900 for their respective intended uses. The devices in question were owned, maintained, serviced and provided to Benjamin and his family by Defendant THE CARE GROUP OF TEXAS ("Care Group") during a period of time when Plaintiffs' own pulse oximiter, a Masimo Radical, designed, manufactured, sold and distributed by Masimo Corporation, was being serviced by Defendant Care Group.

18. At approximately 6:00am Plaintiff RICHARD GUINN ("Richard") woke up to begin his daily routine. He visited Benjamin and repositioned him in his bed. He then utilized Benjamin's suction device to clear out any mucous or other obstructions that may have presented themselves over the course of the previous evening and inspected Benjamin's SpO2. Between 6:45am and 7:40am Richard went to the gym and grocery store. Upon returning home he entered his bedroom and got ready for work. At 7:50am Richard went into Benjamin's bedroom to kiss him goodbye and immediately noticed something was terribly wrong.

19. Benjamin was colorless and breathless with his eyes and mouth open. Richard rushed to his son's side and heard a faint beeping originating from the Avant 9600 PO the LTV 900 was not emitting any audible alarm. Richard rushed to awaken Plaintiff CONNIE GUINN ("Connie") who called for emergency assistance.

20. Connie immediately ran to Benjamin's side to find him lifeless. Connie noticed the Avant 9600 PO was not functioning properly and had failed to present any visual or audible alarm, as it should have. An apparent error message accompanied by a faint but audible beep would appear at regular intervals. Connie found Benjamin's ventilator was properly attached and functioning normally and confirmed this by tracing the ventilator tubes and checking the tracheotomy tube placement. However, the LTV 900 was not emitting any form of audible alarm

nor was their any visual alarm present. Upon examination, she noticed her son's chest was not rising and falling with the breaths the ventilator was supposed to be providing to him nor was his heart beat or pulse detectable.

21.     The paramedics arrived at approximately 8:04am and immediately provided emergency acute-medical care and resuscitation efforts. Benjamin was unresponsive and was transferred to Memorial Hermann via ambulance. Prior to his 8:26am arrival cardiopulmonary resuscitation was successfully administered. An emergency department assessment was performed at 8:40am and although he was breathing with assistance, he was neurologically unresponsive.

22.     Benjamin remained comatose for the duration of his hospitalization and was pronounced dead at 4:25pm. The cause of death was acute respiratory failure leading to cardiopulmonary arrest. Benjamin's tragic passing was a direct and proximate result of Defendants' acts and/or omissions. Benjamin was 7 years old.

### VI. COUNT ONE – NEGLIGENCE

23.     Plaintiff incorporates all allegations set out above and in addition alleges that Defendants owed Plaintiffs a duty of ordinary care with respect to the manufacturing, design, formulation, construction, fabrication, production, assembly, maintenance, servicing, marketing and/or sale of the Avant 9600 PO and the LTV 900. Defendants were negligent in breaching said duty as described herein. Specifically, Defendants negligently manufactured, designed, tested, constructed, fabricated, produced, assembled, maintained, serviced, marketed, sold, leased and/or loaned the Avant 9600 PO and the LTV 900 to Plaintiffs, the medical community, the governing regulatory agencies and the public at large.

24. Furthermore, despite the LTV 900 being subject to December 2004 Class I recall and a August 13, 2008 Class II recall, Defendants CareFusion and Care Group provided the LTV 900 to Plaintiffs with knowledge of the underlying defective and dangerous condition of the product and despite the serious safety concerns addressed in the aforementioned recalls.

25. In addition, Defendant Care Group is liable for the negligent acts and/or omissions described here in as a nonmanufacturing seller of the LTV 900 pursuant to Texas Civil Practice and Remedies Code §82.003(a)(2) and/or §82.003(a)(6). Specifically, Defendant Care Group failed to properly maintain and service the LTV 900 resulting in alterations and/or modifications to the device which results in harm to the Plaintiffs as described herein. Furthermore, Defendant Care Group had actual knowledge defects to the LTV 900 at the time it supplied the product to Plaintiffs by way of the aforementioned recall which resulted in harm to the Plaintiffs as described herein.

26. Defendants' acts and omissions ignore the obligations and duties owed to Plaintiffs. Defendants' collective and/or distinct negligent acts and/or omissions proximately caused Plaintiff's damages as described below.

### VII. COUNT TWO - MANUFACTURING DEFECTS

27. Plaintiffs were purchasers and/or users of the Avant 9600 PO and/or the LTV 900. Benjamin's injuries and death where the result of manufacturing defects relating to the Avant 9600 PO and/or the LTV 900. Benjamin, whether with or without a special medical condition, was in a class of persons that the Defendants should have reasonably foreseen as being subject to the harm caused by the manufacturing defects relating to the Avant 9600 PO and/or LTV 900. The Avant 9600 PO and/or the LTV 900 were defective when it left Defendants' control.

28. The Avant 9600 PO and LTV 900 were defective because their respective use creates a substantial and/or extreme degree of risk of serious bodily injury and/or death. With respect to the Avant 9600 PO it was defective because of its failure to properly emit and disseminate visual and/or audible alarms as intended and it fails to accurately measure, display, record and/or inform the user of $SpO_2$ levels and pulse rates. With respect to the LTV 900 it was defective because of its failure to properly emit and disseminate visual and/or audible alarms as intended and its failure to properly ventilate the patient.

29. The Avant 9600 PO deviates in terms of its construction and/or quality from the specifications or planned output in a manner that renders it unreasonably dangerous. The Avant 9600 PO in question was flawed and did not properly conform to Defendants' own specifications nor was it identical to its mass labeled siblings.

30. The LTV 900 deviates in terms of its construction and/or quality from the specifications or planned output in a manner that renders it unreasonably dangerous. The LTV 900 in question was flawed and did not properly conform to Defendants' own specifications nor was it identical to its mass labeled siblings.

31. Prior to the time of Plaintiffs' use of the Avant 9600 PO, Defendants knew or should have known (1) that it would be purchased, rented, leased and/or used without inspection for manufacturing defects; (2) that it would be purchased, rented, leased and/or used by patients with special medical conditions such as those of Benjamin; and (3) about the Avant 9600 PO's above described defects.

32. Prior to the time of Plaintiffs' use of the LTV 900, Defendants knew or should have known (1) that it would be purchased, rented, leased and/or used without inspection for manufacturing defects; (2) that it would be purchased, rented, leased and/or used by patients with

9

special medical conditions such as those of Benjamin; and (3) about the LTV 900 above described defects.

33.     Plaintiffs could not, in the exercise of reasonable care, have discovered the defective nature of the Avant 9600 PO and/or the LTV 900. The Plaintiffs could not have known that the Avant 9600 PO and/or LTV 900 were respectively manufactured, designed, tested, constructed, fabricated, produced, assembled, marketed, maintained, serviced, supplied, sold, leased and/or loaned in such a manner that would increase the risk of serious injury to Benjamin. Ordinary consumers would not have recognized the potential risks of the Avant 9600 PO and/or the LTV 900.

34.     The Avant 9600 PO and LTV 900, at the time of injury, were being used in the manner intended by Defendants, or in the alternative, used or misused in a manner that was reasonably foreseeable by the Defendants as involving a substantial danger not readily apparent. At the time Benjamin used the Avant 9600 PO and the LTV 900, they each were in substantially the same condition as when they left the possession of Defendants.

35.     Defendants failed to give adequate warnings of the latent dangers associated with the Avant 9600 PO and/or the LTV 900. The Avant 9600 PO and LTV 900 products are unreasonably dangerous for their respective intended uses due to the manufacturing defects described herein. The benefits of the Avant 9600 PO and/or LTV 900 were not outweighed by the risks of their respective designs.  There existed safer alternative designs.  The safer alternative designs would have prevented the subject injuries.  The safer alternative designs were economically and technologically feasible at the time the subject products left the control of Defendants.

36. Defendants failed to identify dangers posed by the Avant 9600 PO and/or the LTV 900; investigate complaints about malfunctions and/or injuries correlating to use of the Avant 9600 PO and/or LTV 900; perform adequate testing to identify dangers posed by the Avant 9600 PO and/or LTV 900; perform testing to identify methods for mitigating the dangers posed by the Avant 9600 PO and/or LTV 900's use; and develop and provide adequate warnings of the latent dangers created by the Avant 9600 PO and/or LTV 900's use.

37. Defendant Care Group failed to properly service and/or maintain the Avant 9600 PO and/or the LTV 900 and leased and/or loaned the two devices to Plaintiffs with knowledge of the defective nature of said devices. Defendant Care Group had specific knowledge of the recalls associated with the LTV 900 and despite this knowledge leased and/or loaned the device to Plaintiffs.

38. The Avant 9600 PO and/or LTV 900 were unsafe for their express and intended purposes. Plaintiffs detrimentally relied on representations, express and implied, that the Avant 9600 PO and LTV 900 would be safe for Plaintiffs to use. Defendants should not have placed the Avant 9600 PO and/or the LTV 900 on the market given their defective conditions, improper labeling and inadequate instructions and warnings.

39. The manufacturing defects described above proximately caused Plaintiffs' damages as described below.

## VIII. COUNT THREE - DESIGN DEFECTS

40. Plaintiffs were purchasers, leases, and/or users of the Avant 9600 PO and LTV 900. Benjamin's injuries and death where the result of design defects relating to the Avant 9600 PO and/or LTV 900. Benjamin, whether with or without a special medical condition, was in a class of persons that the Defendants should have reasonably foreseen as being subject to the

harm caused by the design defects relating to the Avant 9600 PO and/or LTV 900. The Avant 9600 PO and/or LTV 900 were defective when it left Defendants' control.

41. The Avant 9600 PO was defective because its use creates a substantial and/or extreme degree of risk of serious bodily injury and/or death associated with its failure to properly emit and disseminate visual and/or audible alarms as intended and it fails to accurately measure, display, record and/or inform the user of $SpO_2$ levels and pulse rates.

42. The LTV 900 was defective because its use creates a substantial and/or extreme degree of risk of serious bodily injury and/or death associated with its failure to properly ventilate the patient and/or emit and disseminate visual and/or audible alarms as intended.

43. Defendants have a duty to design a reasonably safe product. This duty extends to both intended and reasonably foreseeable uses of the product. The Avant 9600 PO and/or LTV 900 are designed in a manner that renders them unreasonably dangerous.

44. Prior to the time of Plaintiffs' use of the Avant 9600 PO and LTV 900, Defendants knew or should have known (1) that it would be purchased, rented, leased and/or used without inspection for design defects; (2) that it would be purchased, rented, leased and/or used by patients with special medical conditions such as those of Benjamin; (3) about the Avant 9600 PO and LTV 900's above described defects; and (4) that the defective nature of the Avant 9600 PO and LTV 900 had previously caused serious bodily injury and/or death to its users with special medical conditions such as those of Benjamin.

45. Plaintiffs could not, in the exercise of reasonable care, have discovered the defective nature of the Avant 9600 PO and/or the LTV 900. The Plaintiffs could not have known that the Avant 9600 PO and LTV 900 was manufactured, designed, tested, constructed, fabricated, produced, assembled, marketed, supplied, maintained, serviced, sold, leased and/or

loaned in such a manner that would increase the risk of serious injury to Benjamin. Ordinary consumers would not have recognized the potential risks of the Avant 9600 PO and/or the LTV 900.

46. The Avant 9600 PO and LTV 900, at the time of injury, were being used in the manner intended by Defendants, or in the alternative, used or misused in a manner that was reasonably foreseeable by the Defendants as involving a substantial danger not readily apparent. At the time Benjamin used the Avant 9600 PO and LTV 900, the devices were in substantially the same condition as when they left the possession of Defendants.

47. Defendants failed to give adequate warnings of the latent dangers associated with the Avant 9600 PO and/or the LTV 900. The Avant 9600 PO and LTV 900 are products that are unreasonably dangerous for their intended uses due to the design defects described herein. The benefits of the Avant 9600 PO and LTV 900 are not outweighed by the risks of their respective designs. There existed safer alternative designs. The safer alternative designs would have prevented the subject injuries. The safer alternative designs were economically and technologically feasible at the time the subject devices left the control of Defendants.

48. Defendants failed to identify dangers posed by the Avant 9600 PO and/or LTV 900; investigate complaints about malfunctions and/or injuries correlating to use of the Avant 9600 PO and/or LTV 900; perform adequate testing to identify dangers posed by the Avant 9600 PO and/or LTV 900; perform testing to identify methods for mitigating the dangers posed by the Avant 9600 PO and/or LTV 900's use; and develop and provide adequate warnings of the latent dangers created by the Avant 9600 PO and/or LTV 900's use.

49. The Avant 9600 PO and/or LTV 900 were unsafe for their express and intended purpose. Plaintiffs detrimentally relied on representations, express and implied, that the Avant

9600 PO and LTV 900 would be safe for Plaintiffs to use. Defendants should not have placed the Avant 9600 PO and/or LTV 900 on the market given their defective conditions, improper labeling and inadequate instructions and warnings.

50. The manufacturing defects described above proximately caused Plaintiffs' damages as described below.

### IX. COUNT FOUR - MARKETING DEFECTS

51. Defendants had a duty to warn of the potential harm presented by the defective nature of the Avant 9600 PO and/or LTV 900 as described herein. This duty extends to what Defendants knew or should have known as to the potential harm presented by the nature of its product. Defendants' marketed the Avant 9600 PO and/or LTV 900 without adequate warnings of the dangers associated with its use and failed to provide adequate instructions for its safe use. This duty extends beyond a purchaser to the ultimate user. (*See Lopez v. Aro Corp.,* 584 S.W.2d 333, 334 (Tex.Civ.App.-San Antonio 1979).

52. Plaintiffs were purchasers and/or users of the Avant 9600 PO and LTV 900. Benjamin's injuries and death were the result of design defects relating to the Avant 9600 PO and/or LTV 900. Benjamin, whether with or without a special medical condition, was in a class of persons that the Defendants should have reasonably foreseen as being subject to the harm caused by the design defects relating to the Avant 9600 PO and/or LTV 900. Defendants failed to provide adequate warnings as to the dangers associated with the Avant 9600 PO and/or LTV 900 and/or adequate instructions for their safe use when the devices left Defendants' control or any relevant time thereafter.

53. Defendants failed to adequately warn that use of the Avant 9600 PO creates a substantial and/or extreme degree of risk of serious bodily injury and/or death associated with its

14

failure to properly emit and disseminate visual and/or audible alarms as intended and it fails to accurately measure, display, record and/or inform the user of $SpO_2$ levels and pulse rates. Defendants failed to provide adequate instructions that would allow users to mitigate the risks described above.

54. Defendants failed to adequately warn that use of the LTV 900 creates a substantial and/or extreme degree of risk of serious bodily injury and/or death associated with its failure to properly ventilate the patient and/or emit and disseminate visual and/or audible alarms as intended. Defendants failed to provide adequate instructions that would allow users to mitigate the risks described above.

55. Prior to the time of Plaintiffs' use of the Avant 9600 PO and LTV 900, Defendants knew or should have known (1) that it would be purchased, rented, leased and/or used without inspection for design defects; (2) that it would be purchased, rented, leased and/or used by patients with special medical conditions such as those of Benjamin; (3) about the Avant 9600 PO and LTV 900's above described defects; and (4) that the defective nature of the Avant 9600 PO and LTV 900 had previously caused serious bodily injury and/or death to its users with special medical conditions such as those of Benjamin.

56. Plaintiffs could not, in the exercise of reasonable care, have discovered the defective nature of the Avant 9600 PO and/or LTV 900. The Plaintiffs could not have known that the Avant 9600 PO and/or LTV 900 were manufactured, designed, tested, constructed, fabricated, produced, assembled, marketed, supplied, maintained, serviced, sold, leased and/or loaned in such a manner that would increase the risk of serious injury to Benjamin. Ordinary consumers would not have recognized the potential risks of the Avant 9600 PO and/or LTV 900.

57. The Avant 9600 PO and LTV 900, at the time of injury, were being used in the manner intended by Defendants, or in the alternative, used or misused in a manner that was reasonably foreseeable by the Defendants as involving a substantial danger not readily apparent. At the time Benjamin used the Avant 9600 PO and LTV 900, the devices were in substantially the same condition as when they left the possession of Defendants.

58. Defendants failed to give adequate warnings of the latent dangers associated with the Avant 9600 PO and/or LTV 900. The Avant 9600 PO and LTV 900 are products unreasonably dangerous for their intended uses due to the design defects described herein. Defendants failed to identify and warn Plaintiffs as to the dangers posed by the Avant 9600 PO and/or LTV 900; investigate and warn Plaintiffs as to complaints about malfunctions and/or injuries correlating to use of the Avant 9600 PO and/or LTV 900; perform adequate testing to identify dangers posed by the Avant 9600 PO and/or LTV 900; perform testing to identify methods for mitigating the dangers posed by the Avant 9600 PO and/or LTV 900's use; and develop and provide adequate warnings of the latent dangers created by the Avant 9600 PO and/or LTV 900's use.

59. The Avant 9600 PO and/or LTV 900 were unsafe for thier express and intended purpose. Plaintiffs detrimentally relied on representations, express and implied, that the Avant 9600 PO and/or LTV 900 would be safe for Plaintiffs to use. Defendants should not have placed the Avant 9600 PO and/or LTV 900 on the market given their defective condition, improper labeling and inadequate instructions and warnings.

60. The failure to provide adequate warnings and/or instructions described above proximately caused Plaintiffs' damages as described below.

16

## X **ALTERNATIVE THEORIES**

61. No prior pleading is waived by subsequent pleading herein. To the extent any theories are inconsistent, they are pled in the alternative.

## XI. **DAMAGES**

62. Plaintiffs have been damaged by Defendants' conduct, acts and omissions set forth herein. Accordingly, Plaintiffs sue for actual damages. As Defendants' conduct was done knowingly and maliciously, Plaintiffs sue for an additional amount as exemplary damages. Plaintiffs seek special and general compensatory damages along with punitive damages for the tortious conduct alleged. Plaintiffs seek pre- and post-judgment interest at the maximum legal rate, costs of court, and reasonable attorney's fees.

63. Pursuant to C.P.R.C. § 71.002, Plaintiffs plead for pecuniary damages against the Defendants jointly and severally as follows:

   a. Pecuniary loss sustained in the past, meaning the loss of care, maintenance, support, services, advice, counsel and reasonable contributions of pecuniary value that Plaintiffs, in reasonable probability, would have received had Benjamin lived.

   b. Pecuniary loss that, in reasonable probability, Plaintiffs will sustain in the future;

   c. Loss of companionship and society sustained by Plaintiffs in the past. That is, the loss of the positive benefits flowing from the love, comfort, companionship and society that Plaintiffs in reasonable probability, would have received from Benjamin had he lived;

17

  d. Loss of companionship and society that, in reasonable probability, Plaintiffs will sustain in the future;

  e. Mental anguish sustained in the past by Plaintiffs and the emotional pain, torment and suffering experienced by Plaintiffs, because of the death of their son, Benjamin.

64. Pursuant to C.P.R.C. § 71.009 Plaintiffs plead for exemplary damages because Benjamin's death was caused by the willful acts and/or omissions of the Defendants or alternatively the gross negligence of Defendants' employees, agents, representatives, subsidiaries, parent or affiliate entities.

65. Pursuant to C.P.R.C. § 71.021 Plaintiffs as co-administrators of the estate of Benjamin E. Guinn, plead for personal injury damages suffered by Benjamin before his tragic death as follows:

  a. Pain and mental anguish;

  b. Medical expenses; and

  c. Funeral and burial expenses.

66. Plaintiffs have been damaged in a sum far in excess of the minimum jurisdictional limits of this Court, for which they now sue.

## XII. JURY DEMAND

67. Plaintiffs hereby request a trial by jury on all claims and submit their jury fee herewith.

## XIII. PRAYER FOR RELIEF

68. Plaintiffs pray that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that the Defendants appear and answer, and that upon

final hearing, Plaintiffs have judgment against Defendants, both jointly and severally, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, and all such other and further relief, to which Plaintiffs show themselves justly entitled.

        Respectfully submitted,

        **ARNOLD & ITKIN LLP**

        */s/ Noah M. Wexler*
By:_____
        Noah M. Wexler
        Texas State Bar No. 24060816
        Southern District of TX: 916478
        1401 McKinney Street, Suite 2550
        Houston, TX 77010
        (713) 222-3800
        (713) 222-3850 (Fax)

        **ATTORNEYS FOR PLAINTIFFS**

OF COUNSEL:
Michael E. Pierce
Texas State Bar No. 24039117
Southern District of TX: 597900
1401 McKinney Street, Suite 2550
Houston, TX 77010
(713) 222-3800
(713) 222-3850 (Fax)